IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COOK COMPOSITES AND POLYMERS CO., | ) |
| Plaintiff/Counter-Defendant, | ) |
| v. | ) No. 11 C 7186 |
| GENERAL CHAUFFEURS, SALES DRIVERS AND HELPERS UNION, LOCAL 179, | ) Judge John Z. Lee |
| Defendant/Counter-Claimant/ Third-Party Plaintiff, | ) |
| v. | ) |
| ARKEMA, INC., | ) |
| Third-Party Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before this Court are cross-motions for summary judgment brought by Plaintiff Cook Composites and Polymers Co. ("CCP") and Defendant General Chauffeurs, Sales Drivers and Helpers Union, Local 179 (the "Union"). CCP seeks to vacate an arbitral award against it, in which the arbitrator found that CCP terminated Union member Melissa Stella ("Stella") without just cause and required CCP to reinstate her to her formerly-held position. The Union seeks to enforce that award. For the reasons provided in this Memorandum Opinion and Order, this Court denies CCP's motion, grants the Union's motion in part and denies it in part, and confirms the award.

## FACTS

The following facts are undisputed.[1] Plaintiff Cook Composites and Polymers Co. ("CCP") formerly owned and operated a manufacturing plant in Lemont, Illinois. (Pl.'s LR 56.1(a)(3) ("Pl.'s LR 56.1(a)(3)") ¶ 7.) The plant was sold on July 1, 2011 to Third-Party Defendant Arkema Inc. (*Id.* n.1.) The CCP plant manufactured material used in graphic inks and industrial flooring. (*Id.*) Certain employees working at the plant were Union members. (Def.'s LR 56.1(b)(3) Stmt. ("Def.'s LR 56.1(b)(3)") ¶ 1.). Since January 2008, CCP and the Union have had in place a collective bargaining agreement (the "CBA") pursuant to the provisions of the LMRA, 29 U.S.C. § 141 *et seq.* (Pl.'s 56.1(a)(3) ¶ 8.) The CBA sets forth the procedures that govern employee grievances and arbitration of such grievances. (*Id.* ¶ 10.) Notably, an arbitrator's remedial powers under the CBA include the power to order that a terminated employee be reinstated. (Pl.'s LR 56.1(a)(3), Ex. 2, CBA at Art. XIX(B)(6)(F).)

In September, 2009, Stella was employed as a material handler at CCP's plant. (Pl.'s LR 56.1(a)(3) ¶ 13.) Stella was injured at the plant in January 2010. (*Id.* ¶ 17.) CCP sent her for a "fitness for duty" exam subsequent to that incident and placed her on paid leave. (*Id.* ¶¶ 17-18.) The physician who examined Stella determined she was unable to perform the physical requirements of the material handler job. (*Id.* ¶ 19.) However, testimony at the arbitration

---

[1] It should be noted that CCP has taken the curious step of filing a "reply to the Union's response to CCP's statement of material facts," which it is not entitled to do under Local Rule 56.1. *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("56.1(b)(3)(B) provides the *only* acceptable means of . . . presenting additional facts.") Moreover, certain statements in this purported "reply," *e.g.*, ¶¶ 23, 24 and 27, set forth improper argument rather than facts. *Id.* at 585 ("The purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner: it is not intended as a forum for factual or legal argument."). As such, this Court will not consider any of the "facts" or arguments set forth therein. For the same reasons, this Court also has disregarded certain headings and other statements of "fact" in CCP's LR 56.1(a)(3) (Doc. 19) and Reply to the Union's LR 56.1(b)(3) (Doc. 25) that constitute improper argument rather than set forth statements of material fact. *See, e.g.*, Pl.'s LR 56.1(a)(3) ¶¶ 43-44 (characterizing certain portions of the arbitrator's ruling as concessions by the arbitrator); Pl.'s Reply Def.'s LR 56.1(b)(3) ¶ 32 (admitting a fact but arguing it is "immaterial").

2

conflicted as to whether the physician applied the proper standard in the "fitness for duty" test. (*Compare* Def.'s LR 56.1(b)(3) ¶ 17, with Pl's Reply Def.'s LR 56.1(b)(3) ¶ 17.) After receiving the results of the fitness for duty exam, CCP disqualified Stella from the material handler position. (Pl.'s LR 56.1(a)(3) ¶ 20.) At that time, it was CCP's position that there were no other positions available in the plant that Stella was physically able to perform. (*Id.* ¶ 25.) CCP agreed to pay Stella through March 15, 2010, to allow some time for another position to become available. (*Id.* ¶ 26.) CCP contends that no appropriate position became available by March 15, 2010, and therefore she was effectively terminated. (*Id.* ¶ 27.) The Union disagreed that there were no appropriate positions available for Stella as of that day, and filed a grievance challenging Stella's "fitness for duty" exam and disqualification from the material handler position. (Def.'s Resp. Pl.'s LR 56.1(a)(3) ¶¶ 27, 28.)

Two days later, a lab position became available for which Stella physically qualified. (Pl.'s LR 56.1(a)(3) ¶ 29.) She bid on and was awarded the lab position. (*Id.*) The Union thus withdrew its grievance regarding her termination from the material handler position. (*Id.* ¶ 30.) The lab position was conditioned on her qualifying for it after a thirty-day training period; but at the end of that training period, CCP concluded that she was not qualified to perform the job. (*Id.* ¶¶ 33-34.) CCP extended the training period an additional thirty days, but once again determined that Stella was not qualified for the lab position. (*Id.* ¶ 35.) The parties are in dispute as to whether Stella's material handling position was filled at that time, and whether there were any other positions available for which Stella was physically qualified. (*Id.* ¶¶ 36-37; Def.'s Resp. to Pl.'s LR 56.1(a)(3) ¶¶ 36-37.) CCP terminated Stella's employment on June 25, 2010. (Pl.'s LR 56.1(a)(3) ¶ 38.)

The Union filed a grievance on behalf of Stella that same day. (*Id.* ¶ 39.) While the parties dispute what that grievance encompassed, it is undisputed that CCP denied the grievance, and the matter went to arbitration. (*Id.* ¶¶ 40, 41.) On March 2, 2011, and April 28, 2011, arbitrator Rose Jacobs heard testimony, and on August 31, 2011, she issued an arbitration award. (*Id.* ¶¶ 41-42.) The arbitrator found that Stella had been terminated without cause because, after CCP had determined that Stella was unqualified for the lab position, it treated her differently than other similarly situated union members in not allowing her to return to her prior position. As a remedy, the arbitrator ordered that Stella be reinstated to the material handler position. (Pl.'s LR 56.1(a)(3), Ex. 1, Award at 20-22.)

## DISCUSSION

Here, the parties each move for summary judgment: CCP seeks to vacate the award, and the Union asks this Court to confirm the award. Cross-movants for summary judgment must individually satisfy the requirements of Fed. R. Civ. P. 56. *Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When, in viewing the record and all reasonable inferences in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant, a genuine issue of material fact exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Each movant individually bears the burden of establishing there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the movant satisfies this burden, the non-movant must set forth specific facts supported by admissible evidence that establish a genuine issue for trial. *Celotex*, 477 U.S. at 324. Facts and inferences are construed in favor of the party against whom the motion is made. *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006).

4

The scope of review a federal court is permitted of an arbitral award rendered pursuant to a collective bargaining agreement is "extremely narrow." *Amax Coal Co. v. United Mine Workers of Am., Int'l Union*, 92 F.3d 571, 575 (7th Cir. 1996); *Arch of Ill. v. Dist. 12, United Mine Workers of Am.*, 85 F.3d 1289, 1292 (7th Cir. 1996). This is due to the strong "federal policy of settling labor disputes by arbitration," which "would be undermined if courts had the final say on the merits of awards." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960). This is not to say that the power of arbitrators is unlimited; an award should be vacated where it fails to "draw[] its essence from the collective bargaining agreement." *Id.* at 597. This axiom has been explained by the Seventh Circuit as follows:

> [S]o long as the award is based on the arbitrator's interpretation — unsound though it may be — of the contract, it draws its essence from the contract. . . . It is only when the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract. . . that the award can be said not to "draw its essence from the collective bargaining agreement. . . ."

*Ethyl Corp. v. United Steelworkers of Am., AFL-CIO-CLC*, 768 F.2d 180, 184-85 (7th Cir. 1985) (emphasis in original) (internal citations omitted), *cert. denied*, 475 U.S. 1010 (1986).

The Supreme Court further underscored the narrowness of this standard as follows: "as long as the arbitrator is *even arguably* construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union, AFL-CIO, et al. v. Misco, Inc.*, 484 U.S. 29, 38 (1987) (emphasis supplied). This is not to say that federal courts have no power to vacate an arbitral award; they can and do. But it is only where "there is 'no possible interpretive route' to the arbitrator's award" that a court should vacate. *Amax*, 92 F.3d at 576 (citations omitted); *see Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1194-95 (7th Cir. 1987) (Posner, J.) ("the question for decision by a federal court asked to set aside an arbitration award . . . is not

whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; *it is whether they interpreted the contract. If they did, their interpretation is conclusive.*") (emphasis supplied) (citations omitted). Given this legal standard, and based on the record before this Court, it cannot be said that the arbitrator was not "even arguably construing or applying the contract and acting within the scope of [her] authority." *See United Paperworkers*, 484 U.S. at 38.

CCP argues that the award should be vacated because the arbitrator exceeded her authority under the CBA. Here, the arbitrator specifically set forth her charge as two-fold: (1) to determine "whether the Grievant was discharged for just cause," and (2) "if not, to *provide a remedy.*" (Pl.'s LR 56.1(a)(3), Ex. 1, Award at 15.) (Emphasis supplied.) With respect to the first prong, the arbitrator explained that a just cause determination "require[d] [her] to review the penalty to insure that it is reasonably related to the seriousness of the circumstances and determine that it is not discriminatory and/or arbitrarily or capriciously imposed as Management is required to administer the workplace with an even hand." (*Id.* at 16.) Although the arbitrator did not take issue with CCP's determination that Stella was not qualified for the lab position, she held that Stella's termination from the lab position nevertheless was without just cause because the evidence demonstrated that similarly situated employees had been allowed to return to their prior positions when their bids on other positions did not pan out, whereas Stella was not. (*Id.* at 18-19.)

The arbitrator agreed with the Union's position that this constituted impermissible disparate treatment, and as a remedy, ordered Stella to be reinstated to her prior position as a material handler:

6

> I am constrained to conclude on the evidence before me that an irrebuttable presumption runs in favor of the Union's version that although CCP found reason to justifiably disqualify the Grievant as a QA Lab Process Technician, there was not just cause to discharge her from employment based upon the clear and convincing evidence adduced at the hearing that she was treated differently from all the other employees in similar circumstances who bid on other jobs and were permitted to return to their prior jobs. When Stella was not afforded the same opportunity and then terminated, her Article V – Seniority rights were seriously breached.

(*Id.* at 20.)

The arbitrator's decision with respect to the just cause issue was explicitly tied to the language of the CBA regarding seniority rights. (Pl.'s LR 56.1(a)(3), Ex. 2, CBA Art. V.) In fact, the arbitrator framed the issue before her as follows: "[t]he keystone question is whether the Grievant in this matter was discharged for just cause and *whether the proceedings were consistent with the Agreement.*" (Pl.'s LR 56.1(a)(3), Ex. 1, Award at 15-16, emphasis supplied.) Ultimately, the arbitrator concluded that the evidence demonstrated that CCP "has erred and has acted arbitrarily, capriciously, and discriminately" with regard to the terms of the CBA and that "[h]ence, just cause did not exist with respect to Melissa Stella." (*Id.* at 20.)

Thus, the award makes plain that the arbitrator examined the evidence, found that CCP had acted improperly in terminating Stella based upon that evidence, and thus concluded that the applicable provisions of the CBA were violated. Based on the record before this Court and the limited charge given to federal courts in reviewing arbitral awards, it cannot be said that the award in this case did not flow from the essence of the agreement such that it should be vacated.[2]

---

[2] Accordingly, this Court disregards CCP's argument that the arbitrator improperly grafted provisions into the CBA; specifically, her statement that Stella was "on loan" to the lab during the trial period for the lab position. (Pl.'s Reply Mot. Summ. J. 4.) Nowhere did the arbitrator hold that that phrase was to be read into the CBA. "Beady-eyed scrutiny" should not be applied to this simple turn of a phrase. *Chi. Typographical Union No. 16 v. Chi. Sun Times, Inc.*, 935 F.2d 1501, 1506 (7th Cir. 1991).

For its part, CCP argues that, given the remedy ordered, the arbitrator actually ruled on the propriety of the first termination (from the material handler position), rather than the second termination (from the lab position). But this argument is unavailing.

As a preliminary matter, the arbitrator expressly recognized that the question of whether the Grievant was discharged properly from her first position was not before her:

> [T]he question of the propriety of the first discharge and a final ruling thereon are not properly before the instant Arbitrator as an issue. Accordingly, the Parties are advised that although there was extensive reference and discussion held with respect to the prior discipline by both Parties to the instant hearing during the presentation . . . same was permitted only as factual background and . . . the dispositive issue on the merits of the instant dispute has been narrowed to include only the stipulated issue put before the undersigned Arbitrator in the second discharge.

(Pl.'s LR 56.1(a)(3), Ex. 1, Award at 17-18.) This language makes plain that the arbitrator knew that the only issue before her was the propriety of Stella's second termination, and that any consideration of the first termination provided only factual background.[3]

Moreover, the parties expressly stipulated that the arbitrator was empowered to provide a remedy at her discretion. (Pl.'s LR 56.1(a)(3), Ex. 2, CBA Art. XIX(B)(6)(F).) Accordingly, the arbitrator's order that Stella be reinstated to the material handler position as a remedy for CCP's improper conduct was plainly proper. The CBA itself provides that if an arbitrator finds that an employee has not been discharged for cause, that employee "may be reinstated, with

---

[3] Even if this were not the case, the question of whether the evidence presented provided a proper factual basis for this finding is beyond the scope of this Court's review. As the Seventh Circuit has repeatedly held, errors of fact or law made by an arbitrator are not to be redressed by this Court. *See Prostyakov v. Masco Corp.*, 513 F.3d 716, 723 (7th Cir. 2008) ("[w]e repeatedly have stated that we do not – and will not – review arbitral awards for legal or factual error"); *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 961 (7th Cir. 1993) ("Generally, we will not vacate an arbitration award because the arbitrator made errors of fact or law."). Thus, even if it were this Court's view that the evidence presented did not amount to disparate treatment of Stella—and this Court does not reach that question—that would not provide a basis to vacate the award given this Court's finding that the Arbitrator interpreted the CBA in reaching her decision. *Hill*, 814 F.2d at 1194-95.

compensation in whole or in part, or without compensation, in the discretion of the arbitrator." (*Id.*)

The arbitrator herself recognized this grant of authority, framing the second prong of her charge as her ability to determine the appropriate remedy in the event that Stella's termination lacked just cause. (Pl.'s L.R. 56.1(a)(3), Ex. 1, Award at 15-16.) Her reading of the CBA is consistent with well-settled law that arbitrators are "as a matter of public policy. . . given great flexibility in designing remedies based on their interpretation of such agreements." *Local Union No. 1, Bakery, Confectionery & Tobacco Workers Int'l Union v. Interstate Brands Corp.*, No. 99 C 2522, 2000 WL 126798, at *2 (N.D. Ill. Feb. 1, 2000) (citing *United Steelworkers*, 363 U.S. at 597). "It is generally assumed that the parties to collective bargaining agreements intend that the arbitrators will have some discretion with regard to sanctions for misconduct." *Hill*, 814 F.2d at 1197.

Pursuant to this remedial authority, once the arbitrator found that Stella's termination was without just cause, she then was required to craft the appropriate remedy. According to the Union, Stella's ability to perform as a material handler was relevant to this inquiry. "The issue decided by the Arbitrator ... was not whether Stella was improperly disqualified from her position in January 2010, it was whether Stella was physically able to do the work in June 2010." (Def.'s Resp. to Mot. Summ. J. 10.) This Court agrees. Although the determination that Stella was capable of working as a material handler may have been relevant to the Union's first grievance (which was not at issue), it was also relevant to the arbitrator's evaluation of the appropriate remedy as to the second grievance (which was at issue). Accordingly, the arbitrator did not exceed her authority in engaging in this analysis.

CCP further argues that the terms of the CBA did not permit "bumping," and because there was no current material handler vacancy, the arbitrator violated the terms of the contract by ordering that Stella be reinstated to that position. (Pl.'s Reply to Mot. Summ. J. 5.) This argument is also unavailing for the reasons already stated, but additionally, this Court notes that if the parties had intended the arbitrator's powers to reinstate an employee to her prior position to be limited pursuant to the "no bumping" clause, or for her power to reinstate a former employee to be contingent on there being an open position available, they could have expressly included such limiting language in the CBA. They did not do so. Moreover, as the Union points out, to hold that the arbitrator's power to award this remedy is precluded in such circumstances would contravene public policy by encouraging the company to fill positions solely in order to preclude a grievant from being reinstated.

Based on the foregoing, this Court discerns no basis to find that the arbitrator overstepped her bounds. The arbitrator's award was consistent with the "essence" of the collective bargaining agreement, and the remedy ordered was within her enumerated and commonly understood powers. Therefore, it should not be disturbed

Finally, the Union seeks an award of prejudgment interest pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, rightfully pointing out that such an award is left to the discretion of the district court. In support of this bid, the Union argues that CCP improperly delayed compliance with the arbitrator's award by filing this lawsuit, and that CCP's lawsuit lacked merit. (Def.'s Mot. Summ. J. 14.) This Court disagrees. In *Chrysler Motors Corp. v. International Union, Allied Industrial Workers of Am., AFL-CIO*, 959 F.2d 685, 689 (7th Cir. 1992), the Seventh Circuit declined to award prejudgment interest in a similar case, rejecting the union's argument "that the denial of prejudgment interest improperly rewards

Chrysler for its noncompliance with the arbitration award and that such interest is necessary to make [the grievant] whole." Instead, that court explained that the Union's "reasoning is insufficient to support an award of prejudgment interest because it can be used any time an employer seeks review of an arbitration award ordering reinstatement but is unsuccessful." *Id.* Based on the record before this Court, there is no evidence that CCP's filing of this lawsuit was frivolous, despite this Court's ruling on the merits. Therefore, this Court finds that an award of prejudgment interest is not appropriate.

### CONCLUSION

For all of the foregoing reasons, Plaintiff/Counter-Defendant Cook Composites and Polymers Co.'s Motion for Summary Judgment [18] is denied, and Defendant/Counter-Plaintiff General Chauffeurs, Sales Drivers and Helpers Union, Local 179's Cross-Motion for Summary Judgment [21] is granted in part and denied in part as set forth above. The arbitration award is confirmed, and this case is hereby terminated.

SO ORDERED.   ENTERED: 9/28/12

*John Z. Lee*
United States District Judge